UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/19/07

RICHARD RODRIGUEZ,                      :

                    Petitioner,         :          **OPINION**

            - against -                 :          05 Civ. 10881 (DC)

JOSEPH T. SMITH, Superintendent,        :
Shawangunk Correctional Facility,
                                        :
                    Respondent.
                                        :
- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**    RICHARD RODRIGUEZ
                    Petitioner Pro Se
                    98-A-4528
                    Shawangunk Correctional Facility
                    P.O. Box 700
                    Wallkill, New York  12589

                    ROBERT T. JOHNSON, ESQ.
                    District Attorney, Bronx County
                    Attorney for Respondent
                        By: Peter D. Coddington, Esq.,
                            Hae Jin Liu, Esq.,
                            Assistant District Attorneys
                    198 East 161st Street
                    Bronx, New York  10451

**CHIN, D.J.**

            Pro se petitioner Richard Rodriguez petitions this

Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Rodriguez was convicted on July 13, 1998, following a jury trial

in the Supreme Court of New York, Bronx County, of murder in the

first degree, two counts of murder in the second degree, and

robbery in the first degree.  He was sentenced to concurrent

terms of life without the possibility of parole, two terms of 25

years to life, and 12.5 to 25 years imprisonment, respectively.

Rodriguez contests his conviction on the grounds that the trial court erred when it:  (1) failed to suppress evidence of a belt, money, and wallet that police found when arresting Rodriguez; (2) refused to excuse a prospective juror for cause; (3) failed to dismiss the first-degree murder charge and the robbery charge for insufficient evidence; (4) declined to submit to the jury the lesser-included charge of manslaughter; and (5) allowed simultaneous convictions for first- and second-degree murder.  Rodriguez also contends that he was denied effective assistance of trial counsel and appellate counsel.  For the reasons that follow, the petition is denied.

**BACKGROUND**

## I.   **The Facts**

The following is a summary of the facts adduced at trial.

Rodriguez and Kim Harvell checked into room 106 of the Bronx Park Motel on May 14, 1996.  (Tr. 120-21).[1]  That morning and again that evening, Harvell withdrew cash from her bank account using an ATM card.  (Id. at 64-65).  On May 15th, Rodriguez used Harvell's bank card in several transactions to withdraw cash from Harvell's account.  (Id. at 763-64, 770-71, 787-90, 793-97).  To obtain the PIN number to Harvell's bank card, Rodriguez tortured and killed Harvell.  (Id. at 1719, 1727-

---

[1]     "Tr." refers to the trial transcript.

28).  She was strangled, beaten over the head with a toilet tank top, and stabbed in the neck with a ceramic shard from the tank top.  (Id. at 1717-21).

Police arrested Rodriguez on May 15th after two chambermaids told the hotel manager about suspicious activity in room 106 and damage to the room.  (Id. at 112-14).  Specifically, the room smelled strongly of bleach, the sheets and pillow cases were missing, and the shower curtain and the top of the toilet were missing.  (Id. at 254-55).  The occupant of the room, Rodriguez, had left a large garbage bag outside of the room. (Id. at 254).  The chambermaids saw Rodriguez dragging the bag away, and they noticed that a shower curtain was sticking out of the top and that a trail of liquid was being left behind.  (Id. at 254, 258, 267).

The manager, Edward Walsh, flagged down police officers Timothy Deevy and George Griffo as they were driving by the hotel.  (Id. at 355).  Upon investigation, the officers found clothes, a Clorox bottle, and what appeared to be a blood-soaked pillow in a garbage bag in the motel's dumpster.  (Id. at 358). Walsh told the police that Rodriguez had also rented room 118, and police watched the room while waiting for other officers to arrive.  (Id. at 361).  When Rodriguez came out of room 118 in his underwear, police asked if they could look in the room.  (Id. at 471-74).  Rodriguez assented.  (Id. at 474).  Police found drug paraphernalia inside the room and arrested Rodriguez.  (Id. at 476).  While handing Rodriguez his pants, police patted down

the pockets to look for weapons and found a wallet with two of Harvell's identification cards and a picture of Harvell. (Id. at 493-94). Police also found $260 in twenty dollar bills in the room and a belt. (Id. at 370-71, 373). While he was handcuffed, police saw Rodriguez throw a bank card away from his body, and police recovered the card. (Id. at 552-53). The name on the card was Harvell's aunt, with whom Harvell shared a joint bank account. (Id. at 61-62, 552). Police later found Harvell's body wrapped in sheets under the bed in room 106. (Id. at 393).

## II.  **Procedural History**

### A.  **The Indictment**

The People indicted Rodriguez on eleven counts, including:  first-degree murder; numerous counts of second-degree murder; first-degree manslaughter; multiple counts of robbery in the first degree; multiple counts of criminal possession of stolen property; criminal possession of a weapon; and criminal possession of a controlled substance. (Id. at 11-18).

During the trial, the People dropped most of the charges and proceeded only on four counts:  (1) murder in the first degree (N.Y. Penal Law § 125.27(1)(a)(vii)); two counts of murder in the second degree -- one count of intentional second-degree murder and one count of second-degree felony murder (id. § 125.25(1) & (3)); and robbery in the first degree (id. § 160.15(1)).  (Tr. 1187-90, 1544).

In New York, one form of murder in the first degree is intentional murder committed during the execution of another

- 4 -

felony, such as robbery.  N.Y. Penal Law § 125.27(1)(a)(vii).
Second-degree murder includes both intentional murder (id. §
125.25(1)) and felony murder, which is defined as "caus[ing] the
death of a person" during the course of a felony.  Id. §
125.25(3).  Robbery in the first degree is defined as "caus[ing]
serious physical injury" to a person while forcibly stealing
property.  Id. § 160.15(1).

    B.    **The Trial**

        1.    **The Suppression Hearing**

On May 6, 1998, the trial judge (Globerman, J.) held a
hearing to determine the admissibility of the physical evidence
found in room 118, including the belt and the money.  The trial
judge found that Rodriguez freely and voluntarily consented to
the police entering the room, and that the police found the
evidence in plain view, even though the officers could not recall
exactly where the items were located in the room.  (Hr'g Op. 8-
9).[2]  Additionally, the trial judge found that police properly
searched Rodriguez's pants pockets during the arrest to secure
any potential weapons.  The court also found that police properly
removed the wallet, located in Rodriguez's pocket.  (Id. at 9).
Accordingly, the court found that the physical evidence was
admissible at trial.

---

    [2]    "Hr'g Op." refers to Judge Globerman's opinion dated
July 6, 1998.

2. **Voir Dire**

The trial judge selected a jury on May 14, 15, and 18, 1998. During the voir dire, one prospective juror told the trial judge that his stepson had been the victim of a robbery and stabbing at an automated teller machine. (VD. 200).[3] The trial judge, prosecutor, and defense counsel questioned the prospective juror about whether he could be impartial. (Id. at 200-06). When asked by defense counsel if he could put the event "aside," the juror responded, "Well, I don't know. I don't think it really has a bearing on this particular instance . . . . I don't think it will be a major problem with that." (Id. at 204-05). After further questions from the judge, the prospective juror affirmed that he could be impartial. (Id. at 205). Defense counsel objected to the judge's decision allowing the juror to remain, noting that the juror had said at first that he only thought that he could be impartial. (Id. at 207). The trial judge responded, "He never said I don't know. He never said maybe." (Id.). The trial judge refused to remove the juror for cause, and defense counsel used a peremptory challenge to remove the juror. (Id. at 414). By the end of voir dire, defense counsel had exhausted all of his peremptory challenges.

3. **The Request for the Manslaughter Charge**

After the People moved to dismiss the first-degree manslaughter count, the defense counsel requested that the judge

---

[3]    "VD." refers to the voir dire transcript.

retain the charge.  (Tr. 1204).  Defense counsel argued that the
jury could interpret the facts in a light that sustained a charge
of first-degree manslaughter, rather than intentional murder.[4]
(Id. at 1204-05).  The judge denied the defense's request,
stating that there was no "reasonable view of the evidence" under
which the jury could come to such a conclusion.  (Id. at 1205).

### 4.   **The Verdict and Sentence**

The jury found Rodriguez guilty of all charges:  murder
in the first degree, two counts of murder in the second degree,
and robbery in the first degree.  At sentencing, defense counsel
told the judge that he did not think that the court had any
discretion as to the sentence it could impose for a conviction of
murder in the first degree.  (Sen. 8).[5]  After a conference at
the bench, defense counsel reversed himself and said that the
judge had limited discretion.  (Id. at 8-9).

Under New York sentencing guidelines for first-degree
murder, the trial judge has the discretion to set a maximum
sentence of life imprisonment or a minimum sentence of 20 to 25
years.  N.Y. Penal Law §§ 60.06 & 70.00(1-3).  The judge
sentenced Rodriguez to life without the possibility of parole for

---

[4]     A person is guilty of first-degree manslaughter when,
"[w]ith intent to cause serious physical injury to another
person, he causes the death of such person."  N.Y. Penal Law §
125.20(1).  A person is guilty of murder in the second degree
when, "[w]ith intent to cause the death of another person, he
causes the death of such person."  Id. § 125.25(1).

[5]     "Sen." refers to the sentencing transcript.

murder in the first degree, 25 years to life for each of the two counts of murder in the second degree, and 12.5 to 25 years imprisonment for robbery in the first degree, the terms to run concurrently.  (Sen. 11).  Defense counsel did not ask the court to dismiss the second-degree murder charges as lesser-included offenses of first-degree murder.

   C.   **The Appeals**

       Rodriguez filed a timely notice of appeal.  On February 13, 2003, the Appellate Division, First Department, denied his appeal, holding that:  (1) based on the evidence, a jury could reasonably infer that Rodriguez had killed the victim in the course of a robbery; (2) the trial court did not err in refusing to dismiss the prospective juror for cause; (3) the trial court properly denied Rodriguez's request to submit manslaughter to the jury as a lesser-included offense of intentional murder; and (4) the sentencing court did not misunderstand its range of discretion in imposing Rodriguez's sentence.  People v. Rodriguez, 756 N.Y.S.2d 145, 145-46 (1st Dep't 2003).  The Appellate Division also held that Rodriguez failed to preserve his remaining claims for appeal, including that:  (1) the wallet, belt, and money should have been suppressed; (2) the first-degree murder statute and its sentencing scheme were unconstitutional; and (3) the prosecutor committed misconduct during his summation.  Id. at 146.  The New York Court of Appeals denied leave to appeal on April 17, 2003.  People v. Rodriguez, 99 N.Y.2d 657 (2003).

On January 30, 2004, Rodriguez, acting pro se, asked the Bronx Supreme Court to vacate his conviction, pursuant to N.Y. Crim. Proc. Law § 440.10, on the ground that his trial counsel had been ineffective.  Rodriguez provided affidavits from himself, his mother, and his grandmother stating that his trial counsel did not properly inform him that he faced a sentence of life without parole if convicted.  (See Judge Globerman's Opinion dated June 2, 2004, at 2).  Petitioner further stated that he would have accepted a plea agreement of 20 years to life had he known of his sentencing exposure.  (Id. at 3).  Petitioner's defense counsel provided a sworn affirmation that he did advise petitioner of his potential sentence.  (Id. at 5).  The court found that defense counsel's affirmation was credible and denied petitioner's application on June 2, 2004.  The Appellate Division denied Rodriguez's leave application on September 2, 2004.

Rodriguez then applied to the Appellate Division for a writ of error coram nobis, alleging that his appellate counsel was ineffective for failing to argue that Rodriguez's trial counsel was ineffective.  The Appellate Division denied Rodriguez's application on June 30, 2005.  The Court of Appeals denied Rodriguez's leave application on September 30, 2005.

This petition, dated December 1, 2005, was received by the Court's Pro Se office on December 9, 2005.  Respondent filed opposing papers on September 1, 2006, and Rodriguez filed a reply dated November 25, 2006.

## DISCUSSION

### I.   Federal Review of State Convictions

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards of review for habeas petitioners seeking federal relief from a state conviction.  See Williams v. Taylor, 529 U.S. 362, 399 (2000).  It provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to any judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits unless the adjudication of the claim:
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2).

"[C]learly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta," of Supreme Court decisions as of the time of the relevant state-court decision.  Carey v. Musladin, 549 U.S. ___, 2006 WL 3542769, at *3 (2006) (quoting Williams, 529 U.S. at 412) (internal quotations omitted).  Moreover, AEDPA has been interpreted to require a petitioner to show not only that clearly established federal law was erroneously or incorrectly applied, but that the application was unreasonable.  See Williams, 529 U.S. at 411; see also Lockyer v. Andrade, 538 U.S. 63, 66 (2003); Bell v. Cone,

535 U.S. 685, 688 (2002).  As the Second Circuit has explained, "[a] state court decision is 'contrary to' Supreme Court precedent only if it either 'arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent' and arrives at [the opposite result]." Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001) (quoting Williams, 529 U.S. at 405).  The standards set forth by AEDPA apply to all habeas petitions filed after the statute's effective date of April 24, 1996.  See Boyette v. Lefevre, 246 F.3d 76, 88 (2d Cir. 2001) (citing Williams, 529 U.S. at 402).

AEDPA also specifies the applicable standard for federal review of state-court factual findings: a petitioner must demonstrate that a decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  In habeas proceedings, a "determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting this presumption "by clear and convincing evidence."  Id.

## II.  **The Merits**

Rodriguez raises seven grounds for federal habeas corpus review:  (1) improper admission of evidence; (2) failure to dismiss a prospective juror during voir dire; (3) failure to dismiss a charge for insufficient evidence and for prosecutorial misconduct; (4) failure to submit a lesser-included charge to the

jury; (5) violation of his constitutional protection against
double jeopardy; (6) ineffective assistance of trial counsel; and
(7) ineffective assistance of appellate counsel.  I discuss each
ground in turn.

### A.    Improper Admission of Evidence

Rodriguez argues that:  (1) the hearing court should
have suppressed evidence of the belt and the money found in his
hotel room because, at the suppression hearing, the police could
not specifically identify where in the room the belt and money
were found, and therefore the prosecution could not show that the
evidence satisfied the plain-view exception; and (2) the hearing
court should have suppressed the wallet found in the pocket of a
pair of pants lying on the floor of the hotel room because the
search of the wallet was improper, as it was not incident to
Rodriguez's arrest.  Respondent argues first that these claims
are procedurally barred and second that they fail on the merits.

### 1.   Procedural Bar

Federal courts generally cannot review a state-court
judgment in a habeas corpus petition where the judgment is based
on grounds that are "independent of the federal question and
adequate to support the judgment," Coleman v. Thompson, 501 U.S.
722, 729 (1991), such as a procedural default where, for example,
an argument was not preserved for appeal.  The exception to this
rule is where a petitioner can demonstrate cause for the
procedural default and actual prejudice from the default, or show

that a failure to consider the claim will result in a fundamental
miscarriage of justice.  Id. at 750.

Petitioner's claim is procedurally barred from review
because the state court found that petitioner did not preserve
his argument for appeal.  Rodriguez, 756 N.Y.S.2d at 146.  Such a
decision represents an independent state ground.  See Garcia v.
Lewis, 188 F.3d 71, 77 (2d Cir. 1999).  Petitioner argues that he
received ineffective assistance of counsel, and that this was the
cause of his procedural default.  Because I find that he received
adequate assistance of counsel, see supra Section II.F, that
argument fails.  Thus, petitioner's claim is procedurally barred
because the state court's decision was based on an independent
and adequate state ground, and because petitioner has shown
neither cause and prejudice from the procedural failure, nor that
a failure to consider the claim will result in a miscarriage of
justice.  See Coleman, 501 U.S. at 729, 750.

## 2.  **The Merits**

Federal habeas corpus relief is not available for
Fourth Amendment claims where the petitioner had a "full and
fair" opportunity to litigate the Fourth Amendment issue in the
state courts.  Stone v. Powell, 428 U.S. 465, 494 (1976);  see
also Gates v. Henderson, 568 F.2d 830, 837 (2d Cir. 1977).
Courts have interpreted the word "opportunity" in Fourth
Amendment cases to mean that the state must make available a
statutory mechanism for the suppression of evidence tainted by an

unlawful search or seizure.  McPhail v. Warden, 707 F.2d 67, 69 (2d Cir. 1983).

Even if petitioner's claim were not procedurally barred, Rodriguez could not receive habeas corpus relief on his Fourth Amendment claim because he had a full and fair opportunity to litigate the issue in the state courts.  See Stone, 428 U.S. at 494; Gates, 568 F.2d at 837.  Here, the state provided Rodriguez with a statutory mechanism to review his suppression of evidence claims.  Specifically, the trial court provided Rodriguez with a pre-trial suppression hearing pursuant to N.Y. Crim. Proc. Law Article 710.  Rodriguez then raised his suppression claims on appeal to the Appellate Division and the arguments were rejected.  Rodriguez, 756 N.Y.S.2d at 146. Finally, Rodriguez submitted his claim for certification to the New York Court of Appeals, and that claim also was denied. Rodriguez, 99 N.Y.2d at 657.  Thus, Rodriguez received a full and fair opportunity to litigate this issue in the New York state courts.

Finally, the trial judge conducted a suppression hearing, heard evidence, and made findings of fact.  Under AEDPA, these findings are presumptively correct, 28 U.S.C. § 2254(e)(1), and Rodriguez has not shown that the trial court's determinations were "unreasonable" in light of the evidence presented.  Id. § 2254(d)(2).  Accordingly, his claim regarding the suppression of evidence is denied.

**B.**     **Failure to Dismiss a Prospective Juror**

Rodriguez argues that the trial judge committed constitutional error by failing to dismiss a potential juror for cause when the juror equivocated about whether he could be impartial and when defense counsel eventually used all of his allotted peremptory challenges during jury selection.

**1.**    **Applicable Law**

A defendant has the right to a trial by an impartial jury.  U.S. Const. amend. VI.  Courts measure the partiality of the jury based on the jurors that were selected for trial, not based on jurors who were removed either for cause or by peremptory challenge.  United States v. Towne, 870 F.2d 880, 885 (2d Cir. 1989).  Thus, even where a defendant has used all of his allotted peremptory challenges to remove allegedly biased jurors whom the trial judge has failed to remove for cause, a defendant must still show that the jury was not impartial.  Id. ("[P]eremptory challenges are neither mandated by the Constitution nor of constitutional dimension as such.  Thus, so long as the jury which was ultimately selected was fair and impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean that the sixth amendment was violated.").

New York state courts follow a different rule.  In New York, it is reversible error if a defendant uses a peremptory challenge to remove a juror whom the trial court should have removed for cause, and the defendant later exhausts all of his

- 15 -

peremptory challenges.  See, e.g., People v. Hewitt, 592 N.Y.S.2d 400 (2d Dep't 1993).

### 2.  Application

Here, the decision of the trial court was neither contrary to established federal law nor unreasonable in light of the facts.  First, the trial court's decision was not contrary to federal law, as Rodriguez fails to show that the jury was biased or partial.  Towne, 870 F.2d at 885.  Thus, even if I were to find that the trial judge erred in failing to remove the juror for cause, Rodriguez was not prejudiced because the juror ultimately was not selected to sit at trial.  See id.  This is the case even though Rodriguez exhausted all of his peremptory challenges.  Accordingly, because Rodriguez has failed to show any lack of impartiality from the jurors that sat at trial, he has not suffered constitutional error.  Even assuming there was error under state law, federal law was not violated.

Second, the trial judge's decision to deny the defendant's challenge for cause was not based on an unreasonable determination of the facts.  While the trial judge mistakenly told the defense attorney that the prospective juror "never said I don't know" when asked about whether he could be impartial (VD. 207), the trial judge established through clarifying questions that the prospective juror could, in fact, be impartial.  Thus, the trial judge's decision was not based on an unreasonable determination of the facts.  Rodriguez's request for habeas relief on this ground is therefore denied.

C.   **Failure to Dismiss the First-Degree Murder, Second-Degree Felony Murder, and Robbery Charge**

Rodriguez argues that the trial court should have dismissed the charges of first-degree murder, second-degree felony murder, and robbery because:  (1) the evidence was insufficient to support the People's theory of the robbery and murder; and (2) the prosecutor committed misconduct during his summation by arguing an inflammatory account of the incident that was not based on the available evidence.

1.   **The Insufficient Evidence Claim**

a.   **Applicable Law**

When reviewing a claim that the evidence at trial was insufficient to support a conviction, courts ask whether the evidence "could reasonably support a finding of guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 318 (1979).  As the Court noted in Jackson, the question is not whether a court itself believes that the evidence at trial could support a finding of guilt beyond a reasonable doubt, but whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 318-19.

b.   **Application**

Rodriguez argues that the evidence at trial was insufficient to prove beyond a reasonable doubt that he murdered the victim in furtherance of a robbery, and, thus, his conviction

on the above charges should not stand.  Specifically, Rodriguez argues that there was no witness to the murder, no confession of the murder, and no corroboration for the prosecutor's theory that Rodriguez killed the victim to get the PIN number to her ATM card.  He also argues that a jury could draw several reasonable inferences which point to his innocence.

Rodriguez's arguments are frivolous.  The standard of review for this Court is not whether a jury could have found Rodriguez innocent based on the evidence, but whether, when viewing the evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.  Under that standard, a rational trier of fact could indeed have found Rodriguez guilty of the robbery, the first-degree murder, and the second-degree felony murder charges.

At trial, the People introduced evidence that Rodriguez and Harvell rented a hotel room together (Tr. 120-21); Rodriguez used Harvell's bank card around the time that the medical examiner estimates that Harvell died (id. at 866, 1679-80, 1684-86); Rodriguez was seen dragging a bag away from room 106 (id. at 255-56); Harvell's body was later found in room 106 (id. at 393); Rodriguez was arrested with two of Harvell's identification cards in his possession (id. at 494); and Rodriguez attempted to dispose of the bank card when police arrested him (id. at 552-53).  The People also established that a toilet top cover, the alleged murder weapon, was missing from the bathroom of the room

where Harvell's body was discovered.  (Id. at 254).  Taken together, these events could lead a rational trier of fact to determine that Rodriguez murdered Harvell in furtherance of a robbery, namely to obtain the PIN number on her ATM card. Therefore, petitioner's claim that there was insufficient evidence to support his conviction is rejected.

### 2.  **The Prosecutorial Misconduct Claim**

As an initial matter, this claim is procedurally barred.  The New York Appellate Division dismissed petitioner's claim of prosecutorial misconduct based on his failure to preserve it for appeal.  Rodriguez, 756 N.Y.S.2d at 146.  Such a decision represents a judgment based on grounds that are "independent of the federal question and adequate to support the judgment."  Coleman, 501 U.S. at 729; see also Garcia, 188 F.3d at 77 (dismissal for procedural failure represents independent grounds).  Because I again reject petitioner's claim of ineffective assistance of counsel, Rodriguez's procedural default is not excused for cause, and he has likewise failed to show that he will suffer a fundamental miscarriage of justice.

Although petitioner's claim is procedurally barred, I nevertheless review the claim on the merits.

### a.  **Applicable Law**

To establish prosecutorial misconduct, a petitioner must show that the prosecutor's comments were "so egregious as to violate the defendant's due process rights."  Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998); see also Floyd v.

<u>Meachum</u>, 907 F.2d 347, 353 (2d Cir. 1990).  Thus, the remarks
must be "so prejudicial that they render[] the trial in question
fundamentally unfair."  <u>Floyd</u>, 907 F.2d at 355 (citation and
quotation omitted).  The Second Circuit uses a three-part test
when considering whether prosecutorial misconduct was
prejudicial:  (1) the severity of the misconduct; (2) the
measures adopted to cure the misconduct; and (3) the certainty of
conviction absent the misconduct.  <u>United States v. Elias</u>, 285
F.3d 183, 190 (2d Cir. 2002).

As to the first part of the test, courts have
overturned convictions where prosecutors, in summations,
repeatedly insert prejudicial comments that were not supported by
the evidence.  <u>See, e.g.,</u> <u>Lee v. Bennett</u>, 927 F. Supp. 97, 105-06
(S.D.N.Y. 1996), <u>aff'd</u>, 104 F.3d 349 (2d Cir. 1996).  Courts will
not find prejudice, however, where the prosecutor's offending
comments were simply "minor aberrations in a prolonged trial."
<u>United States v. Modica</u>, 663 F.2d 1173, 1181 (2d Cir. 1981)
(citation omitted); <u>see also</u> <u>Elias</u>, 285 F.3d at 191 (noting that
"the severity of the misconduct is mitigated if the misconduct is
an aberration in an otherwise fair proceeding").  As to the
second part of the test, a limiting instruction by the judge
during the jury charge can cure the prosecutorial misconduct.
<u>Elias</u>, 285 F.3d at 192.  As to the third part of the test, the
petitioner must show that he would not have been convicted but
for the prosecutor's misconduct.  <u>Id.</u>

### b.   **Application**

Rodriguez argues that the prosecutor unfairly biased the jury by presenting an inflammatory and unsupported version of the murder during his summation.  Specifically, Rodriguez objects to:  (1) the prosecutor's statements that Rodriguez whacked the victim over the head with the toilet tank cover so hard that the cover broke (Tr. 1712); (2) the prosecutor's characterization of Rodriguez's action as torturing the victim to get her PIN number (id. at 1718); and (3) the prosecutor's statements that Rodriguez used a ceramic shard from the broken toilet cover to stab the victim in the neck (id. at 1720-22).

I am not convinced that any of the prosecutor's statements were improper, as the statements were based on inferences fairly drawn from the evidence presented at trial. Nonetheless, even assuming the statements were improper, the comments were not so egregious as to violate Rodriguez's rights to due process.  First, as to the severity, the complained-of statements were a minor part of a long trial and were isolated incidents that did not undermine the overall fairness of the trial.

Second, the trial court mitigated any prejudice by instructing the jury that "arguments of counsel are not evidence," that the jury was "not bound to accept the argument of either counsel," and that the jury was "free to disregard" any argument or conclusion by counsel that the jury found

"unreasonable, illogical or inconsistent with the evidence."
(Tr. 1752).

Third, Rodriguez fails to show that he would not have
been convicted but for the prosecutor's statements at summation.
The People presented overwhelming evidence at trial that
Rodriguez committed the acts described by the prosecutor.  A
reasonable jury surely would have convicted even if the
prosecutor had not made the comments in question.  Rodriguez's
request for relief on this ground is therefore denied.

### D.   **Failure to Submit a Lesser-Included Charge to the Jury**

Rodriguez argues that his due process rights were
violated because the trial court failed to submit to the jury the
lesser-included charge of first-degree manslaughter.  Rodriguez
argues that the evidence supported a theory that he did not have
the intent to kill the victim, and, thus, that the jury should
have been given the option of considering first-degree
manslaughter, a crime that does not require an intent to kill.

### 1.   **Applicable Law**

A federal court reviews errors in state jury charges in
a petition for habeas corpus only where the petitioner was
deprived of a federal constitutional right.  See Blazic v.
Henderson, 900 F.2d 534, 540 (2d Cir. 1990).  An erroneous state
jury charge deprives a defendant of a constitutional right where
"the ailing instruction by itself . . . so infect[s] the entire
trial that the resulting conviction violates due process."  Id.
at 541 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

To establish that the trial judge committed constitutional error by failing to charge a lesser-included offense, a petitioner must show that "(1) it is theoretically impossible to commit the greater crime without committing the lesser and (2) a reasonable view of the evidence would permit the jury to find that the defendant had committed the lesser, but not the greater, offense."  Rice v. Hoke, 846 F.2d 160, 165 (2d Cir. 1988).

### 2.   Application

Rodriguez argues that the evidence supports a theory that he did not intend to kill the victim, and, therefore, the trial court should have submitted the charge of first-degree manslaughter to the jury.

Rodriguez satisfies the first prong of the two-part test explained in Rice, id. at 165, as first-degree manslaughter is a lesser-included offense of intentional murder, see People v. Green, 56 N.Y.2d 427, 433 (1982).  Thus, it is impossible to commit the greater crime without committing the lesser.  But Rodriguez fails to satisfy the second prong.  No reasonable view of the evidence would have permitted the jury to find that Rodriguez committed first-degree manslaughter but not intentional murder.

For example, the People presented evidence that Rodriguez first strangled Harvell, then hit her over the head with a ceramic toilet cover, and then stabbed her in the neck with a shard from the broken cover.  (Tr. 856, 858, 861).  There

is no reasonable view of this evidence that would support a finding that Rodriguez intended only to cause serious injury. Therefore, Rodriguez was not entitled to the lesser-included charge of first-degree manslaughter, and his claim for relief on this ground is denied.

E.    **Violation of Double Jeopardy Rights By Simultaneous Conviction of Both First- and Second-Degree Murder**

Rodriguez argues that the trial court violated his constitutional right against double jeopardy when it convicted him of both first-degree murder under the felony provision, N.Y. Penal Law § 125.27(1)(a)(vii), and of the lesser-included counts of intentional and felony second-degree murder.  Id. § 125.25(1), (3).

As an initial matter, petitioner's claim is procedurally barred.  The Appellate Division dismissed this claim on procedural grounds because Rodriguez failed to preserve the issue for appeal.  See Rodriguez, 756 N.Y.S.2d at 146.  Such a ruling is an independent and adequate state ground for dismissal. See Coleman, 501 U.S. at 729; Garcia, 188 F.3d at 77. Additionally, Rodriguez has not shown that there was cause for his procedural default, nor that a failure to consider the claim will result in a fundamental miscarriage of justice.  See Coleman, 501 U.S. at 750.

Even if petitioner's claim were not procedurally barred, I would find that Rodriguez's argument fails on the merits.

- 24 -

Rodriguez argues that, after the Appellate Division affirmed his conviction, the New York Court of Appeals ruled definitively that second-degree felony murder and intentional second-degree murder are lesser-included offenses of first-degree felony murder, and, accordingly, a court must dismiss the lesser-included charges when a defendant is found guilty of the higher charge.  People v. Miller, 6 N.Y.3d 295, 303 (2006).  Rodriguez claims that the People v. Miller principle should be applied retroactively to his case because Miller did not set new law, but rather, upheld lower-court precedent.  See id.

By applying Miller retroactively, Rodriguez argues, this Court could find a violation of his double-jeopardy protections.  Rodriguez relies on Missouri v. Hunter, where the Supreme Court found that, with respect to cumulative sentences imposed upon a defendant who has committed one underlying offense, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."  459 U.S. 359, 366 (1983).  Rodriguez argues that because Miller found that New York law does not provide for multiple convictions for first-degree felony murder and for the lesser-included offenses of second-degree felony murder and intentional second-degree murder, his punishment goes against the Supreme Court's standard in Hunter.

It appears, in light of N.Y. Crim. Proc. Law § 300.40(3)(b)[6] and established common law, that if the trial judge

---

[6]    The pertinent section of N.Y. Crim. Proc. Law § 300.40(3)(b) reads: "With respect to inclusory concurrent counts,

agreed that the second-degree murder charges were lesser-included offenses of first-degree murder, he should have dismissed the second-degree murder convictions after the jury found Rodriguez guilty of first-degree murder under the felony provision.  See, e.g., People v. Lee, 39 N.Y.2d 388, 390 (1976) (criminal possession conviction overturned as lesser-included count of criminal sale conviction); People v. Grier, 37 N.Y.2d 847, 848 (1975) (grand larceny conviction overturned as lesser-included count of robbery conviction).  To the extent that there was any ambiguity about whether the second-degree murder counts were lesser-included offenses of first-degree felony murder, Miller dispenses any doubt.  See 6 N.Y.3d at 303 (the "structure of the intentional felony murder statute leads us to conclude that felony murder is a lesser-included crime under intentional felony murder").

        Relief is not warranted here, however, because the trial judge sentenced Rodriguez to life imprisonment without parole on the first-degree murder conviction, so the convictions and sentences on the lesser-included crimes are superfluous.  There is nothing to suggest that the trial judge imposed a greater sentence on the first-degree murder count because of Rodriguez's convictions on the second-degree murder counts.  A dismissal of the lesser-included charges would have had no effect

the court must submit the greatest or inclusive count and may or must . . . also submit, but in the alternative only, one or more of the lesser included counts.  A verdict of guilty upon the greatest count submitted is deemed a dismissal of every lesser count submitted, but not an acquittal thereon."

on Rodriguez's ultimate sentence, and thus, there was not reversible error.

Further, even assuming that <u>Miller</u> could be applied retroactively, Rodriguez's argument still fails under <u>Hunter</u> because he has not suffered "greater punishment than the legislature intended" as a result of his concurrent sentences. <u>Hunter</u>, 459 U.S. at 366.  <u>Miller</u> merely stands for the proposition that second-degree felony murder and intentional second-degree murder are lesser-included counts of first-degree felony murder, and that it is proper for courts to dismiss the lesser-included counts upon a guilty verdict on the higher count. 6 N.Y.3d at 300.  It did not establish that there is any double-jeopardy violation where a defendant receives concurrent sentences for such crimes.  <u>Miller</u> does not mention double-jeopardy, nor does it reference <u>Hunter</u>.  Put simply, Rodriguez has not shown that he has suffered punishment above what the legislature intended from his concurrent sentences.[7]

---

[7]     Supporting Rodriguez's notion of harm is a Second Circuit decision noting that a defendant's conviction on a lesser-included offense could lead to "tangible prejudice" if, for instance, a court imposed enhanced jail time for a future offense based on the existence of the improperly included conviction.  <u>Jackson v. Leonardo</u>, 162 F.3d 81, 86 (2d Cir. 1998). Yet even if I were to follow that logic, the strict AEDPA standard requires that I affirm the state-court decision unless it is contrary to federal law as established by the Supreme Court.  28 U.S.C. § 2254(d)(1).  <u>Jackson</u> is a Second Circuit decision, not a Supreme Court ruling, and, thus, it is not a basis for relief.  <u>See</u> <u>Nelson v. Sears</u>, 2006 WL 775123, at *14 (S.D.N.Y. 2006) (finding that the <u>Jackson</u> holding alone did not provide a federal court with the power to grant a habeas corpus petition based on a double-jeopardy claim).

Accordingly, he has not demonstrated a double-jeopardy violation, and petitioner's claim for relief on this ground is denied.

### F.   Ineffective Assistance of Trial Counsel

Rodriguez argues that he received ineffective assistance of counsel in violation of the Sixth Amendment. Specifically, Rodriguez claims that his trial counsel misinformed him of the potential sentence he could receive if found guilty, and that this error led him to reject a plea offer that he would have accepted if his trial counsel had advised him correctly.

### 1.   Applicable Law

To prevail on a claim of ineffective assistance of counsel, a petitioner must meet the two-part standard established in Strickland v. Washington.  466 U.S. 668, 687 (1984).  First, the petitioner must show that counsel's performance was deficient.  Id.  To show such deficiency, petitioner must establish that the counsel's performance "fell below an objective standard of reasonableness."  Id. at 688.  Second, the petitioner must show that the deficient performance prejudiced the defense and was so serious as to deprive the petitioner of a fair trial. Id. at 687.

The right to effective assistance of counsel attaches during out-of-court proceedings such as plea negotiations and discussions about sentence exposure.  See, e,g., Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996) (petitioner entitled to habeas relief where counsel was ineffective during plea negotiations); United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998)

(petitioner deserved habeas relief after counsel widely misstated petitioner's sentence exposure).

Finally, when reviewing habeas petitions, this Court must presume that the state court's findings of fact are correct, unless the petitioner can rebut this presumption with "clear and convincing evidence."  28 U.S.C. 2254(e)(1); see also LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002).

## 2.   Application

Rodriguez argues that his counsel misadvised him by saying that Rodriguez could face a maximum prison term of 25 years to life if found guilty.  Based on this faulty information, Rodriguez says that he rejected an offer to plead guilty to 20 years to life.  Rodriguez argues that if he had known the accurate sentence exposure -- life without parole -- he would have accepted the plea.

If Rodriguez's statements about his defense counsel's advice were true, then he might be entitled to habeas relief.  In Gordon, for instance, the Second Circuit affirmed that a prisoner should receive a new trial where the prisoner's defense counsel inaccurately told him that his maximum sentence exposure was 120 months, when in fact it was 327 months.  156 F.3d at 377.  The court found that the petitioner's ineffective assistance of counsel claim met the Strickland test because:  (1) defense counsel's error about the sentence exposure was a breach that "fell below the prevailing professional norms," id. at 380, and (2) the petitioner was prejudiced because there was a reasonable

probability that he would have accepted the plea offer if he had known of his correct sentence exposure.  Id. at 380-81.

Here, however, the state court reviewing the ineffective assistance claim rejected Rodriguez's assertion that his counsel neglected to tell him that he faced a maximum sentence of life imprisonment without the possibility of parole. To the contrary, the state court accepted defense counsel's sworn statement that he did advise Rodriguez of his potential sentence. In the absence of any "clear and convincing evidence" provided by the petitioner to show that the state court's factual finding was unreasonable, the state court's findings control.  See 28 U.S.C. § 2254(e)(1).  Rodriguez has not rebutted the presumption that the findings are correct.

Rodriguez argues that his defense counsel's erroneous in-court statement about the court's sentencing discretion shows that defense counsel was unaware of Rodriguez's sentencing options.  While defense counsel's initial statement was inaccurate, it does not show that defense counsel was unaware that Rodriguez faced a sentence of life imprisonment without the possibility of parole.  Additionally, Rodriguez's statement that he never knew of his sentence exposure goes against the weight of the evidence.  For instance, only weeks after he was arrested, Rodriguez received a notice from the District Attorney's Office stating that the People would not be seeking the death penalty but that they would not be precluded from "the pursuit of any other sentence, including life without possibility of parole." (See Notice of Charging, June 7, 1996).  Thus, the state court

correctly determined that petitioner knew his maximum sentence exposure.  Accordingly, petitioner's request for relief on this ground is denied.

### G.   **Ineffective Assistance of Appellate Counsel**

Rodriguez argues that he received ineffective assistance of appellate counsel because his appellate counsel failed to argue that Rodriguez's trial counsel was ineffective. Specifically, Rodriguez claims that his appellate counsel should have argued that the trial counsel was ineffective for failing to preserve his claims for appeal.

### 1.   **Applicable Law**

The Strickland test applies to ineffective assistance claims against appellate counsel as well as claims against trial counsel.  See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). To prevail, the petitioner must show that his appellate counsel's performance was deficient and that he suffered prejudice from the deficiency.  Strickland, 466 U.S. at 687.  Looking at the performance standard, appellate counsel need not raise every "nonfrivolous" argument on appeal if, in his professional judgment, he decides not to press those arguments.  Jones v. Barnes, 463 U.S. 745, 751 (1983).  As for the prejudice standard, the petitioner must show that, but for the deficiency, there is a "reasonable probability" that the appellate result would have been different.  See Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001).

## 2.   __Application__

Rodriguez states that his appellate counsel should have argued that the trial counsel was ineffective for failing to preserve four claims raised on appeal.  The claims were:  (1) the hearing court should have suppressed the evidence of the belt and money found in room 118 because they were not found in plain view; (2) the hearing court erroneously allowed evidence obtained from the wallet found in petitioner's pants; (3) the prosecutor's comments during summation constituted error; and (4) the second-degree murder charges should be dismissed as lesser-included concurrent counts of the first-degree murder charge.

Under the second prong of the Strickland test, Rodriguez must show a reasonable probability that the Appellate Division would have ruled differently if his appellate counsel had argued ineffective assistance of trial counsel.  Rodriguez has not made such a showing.  Indeed, the Appellate Division found that the evidence of the belt and money "added nothing to the People's case," and that police "properly searched" the wallet.  Rodriguez, 756 N.Y.S.2d at 146.

As for the third and fourth unpreserved claims, petitioner presents unconvincing evidence that there was a reasonable probability of a different outcome had appellate counsel discussed trial counsel's failure to raise an objection. While the Appellate Division did not specifically address these claims in its decision, I have previously discussed why the prosecutor's comments during summation did not constitute error.

Additionally, on the claim of a double-jeopardy violation, the New York Court of Appeals did not decide Miller, the case upon which petitioner bases his double-jeopardy argument, until 2006, years after Rodriguez's conviction. See Miller, 6 N.Y.3d 295. Rodriguez's appellate counsel could not have faulted trial counsel as ineffective for failing to recognize that issue for appeal. See Sellan v. Kuhlman, 261 F.3d 303, 317 (2d Cir. 2001) (counsel not ineffective for failing to predict changes in state law or anticipate a Court of Appeals decision). Accordingly, petitioner's claim for relief on this ground is denied.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied. Because Rodriguez has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C. § 2253 (as amended by AEDPA). I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision would not be taken in good faith. The Clerk of the Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated:     New York, New York
           April 19, 2007

DENNY CHIN
United States District Judge

- 33 -